# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JENNIFER HIXSON, | |
| Plaintiff, | Case No. 2:12-cv-00871-RCJ-PAL |
| vs. | **ORDER** |
| CITY OF LAS VEGAS, | (Mot for Sanctions - Dkt. #26) |
| Defendant. | |

Before the court is Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) (Dkt. #26). The court has considered the Motion, Defendant's Opposition (Dkt. #29), Plaintiff's Reply (Dkt. #30), and the arguments of counsel at hearings conducted on May 21, 2013, and June 25, 2013.

**BACKGROUND**

The complaint in this case was filed in state court and removed (Dkt. #1) May 23, 2012. It involves a hostile work environment claim. Plaintiff alleges that she was employed by the Defendant in the Detention and Enforcement Division in Las Vegas, Nevada from February 2002, until she resigned on July 15, 2010. *See* Complaint attached as Exhibit "A" to Petition for Removal (Dkt. #1), ¶¶7, 8. Plaintiff alleges that she was subjected to a hostile work environment from approximately April 2009, through the date of her resignation. *Id*., ¶8. She was in a relationship with Sergeant Glen Lewis until approximately April 2009, when he began making disparaging remarks and comments about her gender and sexual orientation. *Id*., ¶9. Lewis instituted internal complaints against Hixson in May 2009, which were unfounded and retaliatory. *Id*., ¶10. Plaintiff complained to her direct supervisor, Lieutenant Smith, on May 14, 2009, that Lewis was creating a hostile work environment and retaliating against her. *Id*., ¶14. Lieutenant Smith responded that Sergeant Lewis had the choice to initiate a formal complaint. *Id*. In October 2009, Plaintiff complained to Lieutenant Smith that she was unable

1  to handle the stress of the hostile work environment Lewis created. *Id*., ¶18. However, nothing was
2  done. *Id*. Plaintiff complained in person to the deputy chief in December 2010, and conveyed that she
3  was worried Sergeant Lewis was going to cause her physical harm. *Id*., ¶20. Nothing was done. *Id*.,
4  ¶21.
5         In March 2010, Plaintiff complained to Human Resources that she was being subjected to
6  gender discrimination and hostile work environment. *Id*., ¶22. Human Resources did not interview the
7  Plaintiff, but only took a cursory statement. *Id*., ¶23. Sergeant Lewis filed two hostile work
8  environment claims against the Plaintiff with Human Resources less than two months later. *Id*., ¶25.
9  Plaintiff was interviewed by Human Resources about Sergeant Lewis' complaint. *Id*., ¶26. On July 15,
10 2010, Plaintiff was constructively discharged by being forced to tender her resignation. *Id*., ¶27. Based
11 on these allegations, Plaintiff has asserted claims for gender discrimination and violation of Title VII
12 and NRS 613.310, hostile work environment in violation of Title VII, constructive discharge, and
13 negligent training/supervision.
14        In the current motion, Hixson seeks Rule 37(c) sanctions for the City of Las Vegas' failure to
15 disclose a relevant email regarding her allegations of workplace harassment. Plaintiff has a copy of the
16 email, but the City did not produce it in discovery. The City also failed to supplement its discovery
17 disclosures after receiving a copy of the email. Plaintiff requests an order sanctioning the Defendant
18 by: 1) an adverse inference instruction pursuant to NRS § 47.250(3); 2) monetary sanctions in an
19 amount equal to the cost of hiring an outside IT vendor who should be permitted to investigate the
20 City's IT System for additional missing items that are potentially relevant to Plaintiff's claims; and 3)
21 attorneys fees and costs for having to file this motion.
22        Plaintiff produced a chain of email correspondence between Michael Weyland, a union
23 representative assisting her, and City employee Dan Tarwater from April 6, 2010, through April 7,
24 2010. The email chain is attached as Exhibit "1" to the motion. The City produced a version of the
25 email chain which is attached as Exhibit "2". The City's version of the email chain does not contain the
26 April 7, 2010, 8:28 a.m. email from Dan Tarwater to Michael Weyland. In the email, Tarwater
27 comments that perhaps Weyland will have the good sense to have the Plaintiff retract her hostile work
28 environment claim.

Plaintiff filed her hostile work environment claim March 10, 2010, in an email to Louisa Tuilagi, an employee in the Employee Relations Division of the City. Tuilagi sent a copy of the complaint to Tarwater March 31, 2010. On April 6, 2010, City employee Karen Coyne asked Tarwater and Michelle Freeman if they had time to discuss the Plaintiff's claim because of her concern the matter was nearly a month old and Plaintiff verbally communicated her complaints March 9, 2010. Tarwater then sent the email that "maybe he will have the good sense to have her retract her claim, if not we are moving forward."

Counsel for Plaintiff communicated with counsel for the City pointing out that the City had not produced a copy of Tarwater's April 7, 2010, 8:28 a.m. email to Weyland. The letter was addressed to discuss the City's failure to properly engage in discovery by failing to produce relevant evidence under Rule 37 and Rule 26(e) in initial disclosures or supplemental disclosures. The letter requested that the City supplement its initial disclosures by April 22, 2013, indicating that if supplemental disclosures were not served, the Plaintiff would "seek appropriate remedies after formal conferral."

Plaintiff acknowledges that the City produced voluminous documents in this case. However, the City's failure to produce the April 7, 2010, email is suspicious and prejudicial to Plaintiff because Tarwater's motives are relevant. A reasonable juror could question Tarwater's credibility and bias when he investigated the Plaintiff's hostile work environment claim. Thus, Rule 37(c) sanctions are appropriate for the failure to disclose this email unless the failure was substantially justified or harmless. Plaintiff argues it is the City's burden, as the party facing sanctions for failure to disclose, to establish that its failure to comply with its discovery obligations was either substantially justified or harmless. The failure to produce this email creates an inference the City is also withholding other potentially relevant information, and calls into doubt the City's efforts to properly preserve and maintain electronically stored information. It also suggests the City failed to send litigation hold letters to appropriate personnel to preserve relevant evidence. For these reasons sanctions are appropriate.

The City opposes the motion maintaining that the Plaintiff filed it without an attempt to meet and confer. The City points out that Plaintiff has had a copy of the document throughout the case and that she produced it in her initial disclosures on July 25, 2012. The City represents that on April 7, 2010, when the Tarwater email was sent, the City's email system permanently deleted all messages

after 45 days unless a sender or a recipient affirmatively saved the document to a folder. Neither Plaintiff's union representative, Mr. Weyland, nor Human Resources Director Dan Tarwater saved the April 7, 2010, email in the City's system. Therefore, the system automatically deleted it after 45 days. The City's opposition is supported by the affidavit of Raymond Waber, a City of Las Vegas System Administration Specialist, who attests that prior to June 2010, the City's email system automatically purged all emails after a 45-day period unless the emails were affirmatively transferred to a personal PST folder by the end user. Waber Affidavit, Exhibit "A", ¶3. In June 2010, the City implemented a system known as Quest Archive Manager. *Id*., ¶4. All emails stored at this time in PST folders were loaded into the Quest Archive Manager system in a "read-only" state for central storage in searching, and have not been purged. *Id*. New messages created from June 2010, to September 2011, are automatically purged by the system after 90 days unless a user affirmatively moved messages to extended retention folders. *Id*., ¶5. In September 2011, the City changed to a 7-year retention policy for all email messages. *Id*., ¶6.

      The opposition is also supported by the affidavit of Betsy Comella which is attached as Exhibit "B". Ms. Comella is a Legal Assistant II with the Las Vegas City Attorney's Office in the civil division. *Id.,* ¶1, In August 2012, she was asked to conduct an email search to respond to discovery requests served on Plaintiff's counsel August 6, 2012. *Id*., ¶2. She conducted a search as requested of the City's email archive system, Quest Software Archive Manager, for any emails mentioning Jennifer Hixson between August 9, 2009, and April 24, 2012. *Id*. The results of her email search were produced in the City of Las Vegas' responses to Plaintiff's request for production of documents September 24, 2012. *Id*., ¶4. Her search for responsive documents did not turn up the email from Tarwater to Weyland involved in this motion. *Id*., ¶5.

      The City argues that the motion should be denied because the motion does not contain a statement that Plaintiff's counsel attempted to meet and confer to resolve this issue without filing a motion as required by LR 26-7(b). Additionally, the City argues that because Plaintiff has a copy of the email, any failure to disclose it is harmless, and Plaintiff has not been prejudiced. Finally, the City maintains that sanctions are inappropriate under Rule 37(e) that prohibits imposition of sanctions on a

///

party "for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system" absent exceptional circumstances.

The Plaintiff replies that the City's arguments of "no harm, no foul" were rejected by the court in the *Zubulake* decision, 220 F.R.D. 212 (S.D.N.Y. 2003) ("Zubulake IV"). Plaintiff cites email correspondence produced by the City in this case prior to the time she filed her hostile work environment claim which suggests that the City's representation about its automatic purging system may not be accurate. The City produced hundreds of pages of emails in this case, and Plaintiff believes the City failed to communicate its e-discovery obligations to its employees which has caused her serious damage. The City had an obligation to preserve electronically stored information ("ESI") at the time the evidence was destroyed, the records were destroyed with a culpable state of mind, and the destroyed evidence was relevant to Plaintiff's claims. Plaintiff acknowledges that her request for sanctions must be proportional to the violation. However, she argues that she should be restored to the position she would have been in had the City met its discovery obligations, and that the sanctions she seeks are proportional.

At the May 21, 2013, hearing, the court heard arguments from counsel and continued the hearing for 30 days to allow Plaintiff's counsel to review Defendant's responses to ESI requests, and allow Plaintiff's counsel to depose Mr. Waber to question him about the City's ESI preservation policies and issues addressed in his affidavit. At the June 25, 2013, hearing, counsel for Plaintiff indicated that he had deposed Mr. Waber and had no reason to believe that the City had intentionally destroyed relevant evidence. Rather, counsel for Plaintiff argued that the City failed to preserve relevant ESI after it was on notice of potential litigation. Mr. Tarwater testified at his deposition that the City had not sent a litigation hold letter to City employees at or near the time Plaintiff filed her complaint with the EEO office. For those reasons Plaintiff argues that sanctions are warranted. Counsel for the City argued that the City Attorney's Office was not involved in this matter until June 2011, when Plaintiff filed a formal complaint. The email was authored in April 2010, and at that time the City's system automatically purged emails after 45 days unless someone saved them to a folder. Counsel for the City acknowledged that no litigation hold letter was sent to City employees before the

///

email was purged. However, the City has now modified its document retention policies and communicated the need to preserve documents, including ESI, to its employees.

## DISCUSSION

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002) (*citing Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)) (a party engages in spoliation "as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed"); 7-37A *Moore's Federal Practice - Civil* § 37A.55. A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Moore's* at § 37A.55; *see also United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002); *In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (*citing Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster,* 462 F.Supp.2d at 1067 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*, 462 F.Supp.2d at 1066 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an adverse inference to the party or witness responsible for destroying the evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Second, a court can exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. *Id.* at 1329. Third, the court can dismiss the claim of the party responsible for destroying the evidence. Dismissal, however, is only appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Systems Corp.,* 464 F.3d

951, 958 (9th Cir, 2006) (*citing Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995). Before imposing the "harsh sanction" of dismissal, a court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manager its dockets; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *See Leon,* 464 F.3d at 958 (*citing Anheuser-Busch*, 69 F.3d at 348).

Lastly, the court may award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 961. Before awarding such sanctions, however, a court must make an express finding that the sanctioned party's behavior amounted to "bad faith." *Id.* A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Where the court finds a party has acted in bad faith, any award of attorney's fees must be reasonable. *Id.*

The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (*citing United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same).

A party on notice litigation is reasonably forseeable has a duty to preserve evidence. It is often repeated that we live in a litigious age. It is not reasonably forseeable that every internal employment complaint may result in litigation if not resolved to the employee's satisfaction. However, when an employee claims that she has been subjected to conduct or employment actions that, if true, would amount to state or federal law violations, the prudent employer should take affirmative steps to see that documents and information relevant to her claims and the employers defenses are preserved and not lost in the ordinary course of business. The court need not determine the outer markers of what notice is

/ / /

sufficient to put an employer on notice litigation is reasonably forseeable when an employee makes an internal complaint of an adverse employment action or employment dispute to resolve this motion.

The record in this case is insufficient to support a finding that the City was on notice Ms. Hixson contemplated litigation sufficient to trigger a duty to preserve electronically stored information by suspending its then-existing practice of automatically purging emails after 45 days. Plaintiff sent an email to a City of Las Vegas Personnel Analyst in the Employee Relations Division complaining she was being subjected to a hostile work environment and discrimination on March 10, 2010. She referred to this email as a formal complaint. Plaintiff also indicated that she had previously discussed her concerns through her chain of command, that no one had been helpful to her, and that Deputy Chief Freeman told the Plaintiff that Freeman did not believe that Plaintiff was being harassed or subjected to a hostile work environment. Counsel for the City argues that an internal report of this nature is insufficient to trigger a duty to preserve potentially relevant evidence especially when City employee relations personnel had not communicated with the City Attorney's Office. The court categorically rejects the City's arguments that unless the City's lawyers have been notified of the potential for litigation the duty to preserve has not been triggered. A contrary finding would encourage managers and human resource personnel to fail to advise counsel of reasonably forseeable litigation to avoid the duty to preserve potentially relevant evidence.

Here, Plaintiff resigned July 15, 2010, and asserts she was constructively discharged. Nothing in the record suggests that on or before the date of her resignation, the Plaintiff threatened litigation, or informed the City that she had retained counsel about her employment disputes. There is no evidence before the court that at or near the time Plaintiff tendered her resignation, she claimed that she was resigning because she had been sexually harassed, discriminated against, or subjected to a hostile work environment. By July 15, 2010, when Plaintiff resigned, the email system the City used as the time would have already purged Mr. Tarwater's April 7, 2010, email unless it was saved to a folder. The complaint alleges that Plaintiff filed her NERC complaint September 7, 2010. Once the City received notice of the NERC complaint litigation was certainly foreseeable. However, nothing in the record indicates that the City was notified Plaintiff had retained counsel, made a pre filing demand , or notified the City she was thinking about filing a lawsuit before the Plaintiff filed her NERC complaint. Under

these circumstances, the court finds the City was not sufficiently on notice of potential litigation involving Ms. Hixson's employment to trigger a duty to suspend its then existing practice of purging emails after 45 days.

The court gave counsel for Plaintiff an opportunity to take the deposition of Mr. Waber to question him about the City's ESI preservation policies, and the issues addressed in his affidavit supporting the City's opposition to this motion.  At the June 25, 2013, hearing, counsel for Plaintiff acknowledged that he had no reason to believe that the city had intentionally destroyed relevant evidence. Plaintiff also acknowledges that the City produced voluminous documents in this case.  The affidavit of Ms. Comella attests that she conducted a broad search of the City's email archive system for any emails mentioning Jennifer Hixson between August 9, 2009, and April 24, 2012.  The results of this email search were produced in the City of Las Vegas' Responses to Plaintiff's Request for Production of Documents served September 24, 2012.  This search did not turn up the email from Mr. Tarwater to Mr. Weyland involved in this motion.  The court is satisfied that the email was not produced because it was not saved, and automatically purged 45 days after it was generated before the City was on notice litigation was reasonably forseeable.

Finally, the court finds that Rule 37(c) sanctions are not appropriate for the City's failure to supplement its discovery disclosures after Plaintiff produced the Tarwater email to the City in her disclosures.  Rule 26(e) requires a party who has made a disclosure under Rule 26(a) or responded to a formal discovery request to supplement or correct its disclosures or responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Plaintiff had the email.  Therefore the additional or corrective information was made known to the parties during the discovery process.  Rule 26(e) is not intended to require redundant disclosures.

For all of the reasons stated,

///

///

///

**IT IS ORDERED** that Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) (Dkt. #26) is **DENIED**.

Dated this 10th day of July, 2013.

                                                      Peggy A. Leen
                                                      United States Magistrate Judge